1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA SCHROEDER, by and through her guardian ad litem MARINA LANERI SCHROEDER; MARINA LANERI SCHROEDER, individually,<br><br>                              Plaintiffs,<br><br>     vs.<br><br>SAN DIEGO UNIFIED SCHOOL DISTRICT; KIMBERLY CHAMBERS; FERNANDO RAY ORTIZ; HENRY L. ORTIZ; and SYLVIA ORTIZ,<br><br>                              Defendants. | CASE NO. 07cv1266-IEG(RBB)<br><br>Order Denying Motion to Dismiss [Doc. No. 12] |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants the San Diego Unified School District ("SDUSD") and Kimberly Chambers ("Chambers") (collectively "Defendants") move the Court for dismissal of Plaintiffs' claims under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), the California Unruh Civil Rights Act, and California Civil Code § 51.9. Defendants[1] also ask the Court to decline supplemental jurisdiction over Plaintiffs' remaining state law claims, and to dismiss the case in its entirety. Plaintiffs have filed an opposition, and Defendants have filed a reply. The Court found Defendants' motion appropriate for submission on the papers and without oral argument pursuant to Local Rule 7.1(d)(1), and the

---

[1] The remaining Defendants, Fernando Ray Ortiz, Henry L. Ortiz, and Sylvia Ortiz, have answered the Plaintiffs' complaint.

October 29, 2007 hearing date was vacated. For the reasons set forth herein, the Court DENIES Defendants' motion.

## *Background*

Plaintiff Jessica Schroeder has been mentally disabled since infancy. [Complaint, ¶ 15.] At the time of the incident which forms the basis of Plaintiffs' claims, Jessica was an 18-year-old with the mental capacity of a very young child. [Id., ¶ 13.] Jessica has had significant developmental delays, is significantly below average in general intellectual functioning, exhibits deficits in adaptive behavior, and also has a seizure disorder. [Id., ¶ 14.] Because of her disability, Jessica qualifies for and receives special education programs and assistance from SDUSD. [Id., ¶ 15.] At the time of the incident which forms the basis of Plaintiffs' claims, Jessica was a student at Serra High School as a special needs student. [Id., ¶ 16.]

Jessica's October 2002 Individualized Education Program ("IEP") evaluation commented that Jessica "is generally easily persuaded." A March 31, 2006 draft IEP further commented that "Jessica does not appear to know self-advocacy skills when personal boundaries are violated" and that "Jessica needs to learn basic safety and personal boundaries." [Complaint, ¶ 21.] The same IEP recommended that Jessica be given a benchmark/objective of learning "good-touch, bad-touch and personal safety and boundaries when in an appropriate setting." [Id., ¶ 22.] Plaintiffs allege SDUSD was aware, because of Jessica's disability, that Jessica was vulnerable to sexual molestation. [Id., ¶ 21.]

Plaintiffs allege that despite SDUSD's awareness of Jessica's vulnerability to sexual molestation and abuse, SDUSD and Chambers, the teacher responsible for Jessica, selected a 17-year-old male student to be Jessica's peer tutor. [Complaint, ¶ 27.] Plaintiffs allege the male student, Fernando Ortiz, had a troubled past and had been in trouble with the law prior to his selection as a peer tutor. [Id., at ¶ 29-32.] Plaintiffs allege SDUSD and Chambers allowed Jessica to be supervised one-on-one by Ortiz without close or adequate adult or teacher supervision.

On Monday, April 3, 2006, and for the next few days during that week, Plaintiffs allege Jessica was sexually battered by Ortiz while he was acting in his capacity as a peer tutor to Jessica and while both students were in Chambers' class. [Complaint, ¶ 33.] School was closed the

following week but on Monday, April 17, 2006, the next day school was in session, Plaintiffs allege Ortiz once again sexually assaulted Jessica in Chambers' classroom.[2] [Id., ¶ 35.] At the time of both the April 3 and April 17, 2006 incidents, class was in session and students, teachers, aides, staff, and peer tutors were present. A female student who was also acting as a peer tutor in Chambers' classroom reported the assault to SDUSD personnel on April 17, 2006. However, Plaintiffs allege school officials did not take any action to have Jessica examined, contact officials, or contact Jessica's mother about the assault until the following day, April 18, 2006.[3] [Id., ¶ 37-38.]

Plaintiffs allege that prior to the assaults, Jessica was affectionate and relatively easy to handle by her mother and other adults. [Complaint, ¶ 25.] On the evening of April 17, 2006 and into the day of April 18, 2006, Marina Schroeder was confused, frustrated, and emotionally distressed because of Jessica's puzzling symptoms and behavior. [Id., ¶ 39.] Since the assaults, Jessica has required psychiatric treatment and medication; she has become aggressive, combative, and overtly violent. Jessica is detached and distraught and suffers from sleep difficulties. [Id., ¶ 44-45.]

Plaintiffs' complaint states claims for relief against SDUSD and Chambers under 42 U.S.C. § 1983 and California Civil Code § 51.9. Plaintiffs also state a claim for relief against SDUSD under Title II of the Americans with Disabilities Act and the California Unruh Act. Finally, Plaintiffs state claims against both SDUSD and Chambers for negligence.

### *Legal Standard*

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims in the complaint. A claim can only be dismissed if it "appears

---

[2] Plaintiffs allege that on April 17, 2006, while Jessica and Ortiz were in class, a female student (also a peer tutor) observed Ortiz seated at a classroom table with Jessica seated next to him on his left. Plaintiffs allege Ortiz unzipped his pants and exposed his penis. He then reached over with his left hand and grabbed Jessica's right hand, placing it over his penis while grasping Jessica's wrist. Ortiz proceeded to masterbate with Jessica's right hand over his penis for almost 30 minutes. The female student advised SDUSD employees that she saw Ortiz sexually assault Jessica on at least one prior occasion. [Complaint, ¶ 35.]

[3] Upon questioning by school officials, Ortiz confessed that he repeatedly sexually molested and battered Jessica in the classroom. [Id., ¶ 39-42.]

1  beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle
2  him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Hishon v. King & Spaulding, 467
3  U.S. 69, 73 (1974); Kimes v. Stone, 84 F.3d 1121, 1126 (9th Cir. 1996).  The court must accept as
4  true all material allegations in the complaint, as well as reasonable inferences to be drawn from
5  them, and must construe the complaint in the light most favorable to the plaintiff. N.L. Industries,
6  Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986); Parks School of Business, Inc. v. Symington, 51
7  F.3d 1480, 1484 (9th Cir. 1995); Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir.
8  2004) ("[U]nder Fed.R.Civ.P. 12(b)(6), [the court must] accept[] all facts alleged in the complaint
9  as true and construing them in the light most favorable to the plaintiff,") (citing Karam v. City of
10 Burbank, 352 F.3d 1188, 1192 (9th Cir. 2003)).

11 The court looks not at whether the plaintiff will "ultimately prevail but whether the
12 claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236
13 (1974).  Dismissal is not warranted unless it "appears beyond doubt that the plaintiff can prove no
14 set of facts in support of his claim that would entitle him to relief." Conley, 355 U.S. at 45-46.

### *Discussion*

*1. Plaintiffs' Claims against SDUSD and Chambers under § 1983*

17 Defendants move to dismiss Plaintiffs' claims against them under § 1983.  In order to
18 maintain a cause of action under 42 U.S.C. § 1983, Plaintiffs must allege they were deprived of an
19 existing federal right and such deprivation occurred under color of state law. West v. Atkins, 487
20 U.S. 42, 48 (1988).

21 A.  Existing federal right

22 Defendants argue the Court must dismiss Plaintiffs' claims under § 1983 because Plaintiffs
23 have failed to demonstrate they were deprived of an existing federal right.  Defendants argue
24 Plaintiffs have not, and cannot, state a claim under 42 U.S.C. § 1983 for a violation of their right to
25 equal protection based upon the Defendants' discriminatory treatment of Jessica.[4]  However,

---

[4] Defendants cite the cases of Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 1998), Flores v. Morgan Hills Unified Sch. Dist., 324 F.3d 1130, 1134-35 (9th Cir. 2003), and Michelle M. v. Dunsmuir Joint Unified Sch. Dist., 2006 Dist. LEXIS 77328 (E.D. Cal. 2006) in support of their argument that Plaintiffs cannot prevail on a claim the Defendants violated their right to equal protection.  Each of these cases discuss whether the Equal Protection Clause provides a basis for relief for students harassed or molested by fellow students while attending private school.

Plaintiffs do not base their § 1983 claim upon the rights guaranteed by the Equal Protection Clause.[5] Instead, Plaintiffs argue Jessica had a liberty interest in bodily integrity guaranteed by the Due Process Clause and Defendants' actions or failure to act deprived her of such right. [Complaint, ¶ 48.]

The Due Process Clause of the Fourteenth Amendment protects an individual's liberty interest in his or her bodily integrity. Plumeau v. Yamhill Co. Sch. Dist. #40, 907 F. Supp. 1423, 1435 (D. Or. 1995) (citing Ingraham v.Wright, 430 U.S. 651 (1977) (holding that a student's Fourteenth Amendment liberty interest is implicated by imposition of corporal punishment by public school authorities)); Kennedy v. City of Ridgefield, 439 F.3d 1055, 1061 (9th Cir. 2006) (holding that the due process clause protects a citizen's liberty interest in bodily security against violence at the hands of state officials). Although the Ninth Circuit has not explicitly extended such right to cover the right of a public school student to be free from sexual abuse, several other Circuits have. Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 451 (5th Cir. 1994); Black v. Indiana Area Sch. Dist., 985 F.2d 707, 709 (3d Cir. 1993); Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 726 (3d Cir. 1989).

The Due Process Clause does not impose an affirmative duty upon the state to protect its citizens against the acts of private third parties. Johnson v. City of Seattle, 474 F.3d 634, 639 (9th Cir. 2007). As a result, a governmental entity's failure to protect an individual from harm at the hands of a private party generally does not constitute a violation of the Due Process Clause. DeShaney v. Winnebago Co. Dep't of Soc. Servs., 489 U.S. 189 (1989); Johnson, 474 F.3d at 639. There are two exceptions to the general rule announced in DeShaney – the "special relationship" exception and the "danger creation" exception. Id. The "special relationship" exception applies where the "government enters into a special relationship with a party, such as taking the party into

---

[5] Plaintiffs, in their opposition, make no attempt to demonstrate that their complaint states a claim under the Equal Protection Clause. Plaintiffs do not allege SDUSD and/or Chambers discriminated against Jessica on the basis of her sex or mental disability, and/or the discrimination was either intentional or the result of deliberate indifference.

[5] Defendants also cite to Doe v. Green, 298 F. Supp. 2d 1025, 1035 (D. Nev. 2004) regarding the rights secured by Title IX of the Educational Amendments of 1972. Plaintiffs, however, do not base their § 1983 claim upon a violation of Title IX.

1 custody or placing him into involuntary hospitalization." Morgan v. Gonzales, 495 F.3d 1084,
2 1093-94 (9th Cir. 2007).  Under the "danger creation" exception, "a plaintiff must first show that
3 'the state action affirmatively place[s] the plaintiff in a position of danger,' that is, where state
4 action creates or exposes an individual to a danger he or she would not have otherwise faced."
5 Johnson, 474 F.3d at 639; see also Kennedy, 439 F.3d at 1062.  Plaintiffs argue both exceptions
6 apply in this case.

7 Plaintiffs argue there was a "special relationship" between Jessica and the Defendants,
8 sufficient to impose a constitutional duty upon Defendants to protect Jessica from Ortiz.  Plaintiffs
9 argue "SDUSD knew of Jessica's vulnerability to 'bad touching' or sexual molestation and her
10 inability to adequately defend herself against such abuse or to even communicate the fact that she
11 had been sexually battered."  These allegations, however, do not establish the existence of a
12 "special relationship" sufficient to impose upon Defendants an affirmative legal duty under the
13 Due Process Clause.

> The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf. In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf – through incarceration, institutionalization, or other similar restraint of personal liberty – which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

DeShaney, 489 U.S. at 200.  In support of their argument that a special relationship exists,
Plaintiffs cite Youngberg v. Romeo, 457 U.S. 307, 314-325 (1982) (concerning a patient in a
custodial facility for the mentally retarded), Rodriguez v. Inglewood Unified School Dist., 186
Cal. App. 3d 707, 715 (1986) (concerning the *state law tort duty* of school district to protect its
students against *negligent* acts of private actors), and Van Ort v. Estate of Stanewich, 92 F.3d 831,
841 (9th Cir. 1996) (acknowledging school districts have an affirmative duty *under state law* to
protect students against *negligent* acts of private third parties).  None of these cases support
Plaintiffs' argument there was a "special relationship" between Jessica and the Defendants so as to
impose upon Defendants an affirmative duty to protect Jessica from Ortiz under the Due Process
Clause.  See Van Ort, 92 F.3d at 836 (noting "[u]sually, affirmative government acts, like
incarceration of criminals and institutionalization of the mentally ill" create a "special

1  relationship" within the scope of the exception set forth in DeShaney).

2  Plaintiffs have pointed to no affirmative act by Defendants, similar to incarceration or
3  institutionalization, which created a *constitutionally-mandated* duty to protect Jessica from harm
4  by a private third party.  Plaintiffs have not alleged Defendants required Jessica to attend Serra,
5  took custody of Jessica to the exclusion of her mother's parental rights, or restricted Jessica's
6  personal liberty in a manner similar to incarceration or institutionalization.  See Walton v.
7  Alexander, 44 F.3d 1297, 1304-05 (5th Cir. 1995) (affirming the dismissal of plaintiff's claims and
8  finding that the state had no "special relationship" with a resident student at the Mississippi School
9  for the Deaf, even though he lived at the school, was dependent upon the school for his basic
10 needs, and was strictly regulated in his coming and going); Dorothy J. v. Little Rock Sch. Dist., 7
11 F.3d 729, 732-33 (8th Cir. 1993) (affirming the dismissal of plaintiff's claim for failure to state a
12 claim where mentally retarded boy's attendance at public school was not involuntary and school
13 did not affirmatively restrain the boy or his parents' freedom to act on his own behalf, even though
14 school district knew the fellow student-assailant had a history of sexually assaultive behavior);
15 D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1372-73 (3d Cir. 1992) (no
16 special relationship existed between public school students and school district because school took
17 no action to restrain the liberty of the students.). As a result, Plaintiffs' complaint fails to allege a
18 special relationship which supports the imposition of liability against Defendants under the Due
19 Process Clause.

20 However, Plaintiffs have alleged sufficient facts at this stage of the proceedings to support
21 their claim the Defendants affirmatively placed her in a position of danger giving rise to a duty to
22 protect under the Due Process Clause.  The Ninth Circuit has held that "state actors may be held
23 liable 'where they affirmatively place an individual in danger' . . . by acting with "deliberate
24 indifference to [a] known or obvious danger in subjecting the plaintiff to it." Kennedy, 439 F.3d at
25 1062 (citing Munger v. City of Glasgow, 227 F.3d 1082, 1086 (9th Cir. 2000) and L.W. v. Grubbs,
26 92 F.3d 894, 900 (9th Cir.1996)).  A plaintiff must show "state action creates or expose[d] [the
27 individual] to a danger which he or she would not have otherwise faced." Johnson, 474 F.3d at
28 639.  The Plaintiffs must also allege the danger to which Defendants exposed Jessica was "known

or obvious" and that Defendants "acted with deliberate indifference to it." Kennedy, 439 F.3d at 1064.

In their Complaint, Plaintiffs allege Defendants paired Jessica, a physically-developed, mentally retarded 18-year-old girl, with a known vulnerability to sexual molestation, with a 17-year-old male student with an arrest record and a history of disciplinary problems. Plaintiffs allege that in pairing Jessica with Ortiz, and failing to provide adequate supervision, the Defendants exposed Jessica to a danger which she would not have otherwise faced. [Complaint, ¶ 51-56.] Plaintiffs allege Defendants' actions were reckless and in conscious disregard for Jessica's safety, and Defendants were deliberately indifferent to Jessica's rights. [Complaint, ¶ 57-60.] These allegations are sufficient to state a claim against Defendants for violation of her existing federal right to bodily integrity under the Due Process Clause.

Finally, Defendants argue Plaintiff Marina Schroeder has no basis to assert a claim under § 1983 because the District's alleged one-day delay in notifying her of the sexual assault on Jessica did not deprive her of any established federal right. However, "[i]t is well established that a parent has a 'fundamental liberty interest' in 'the companionship and society of his or her child'." Lee v. City of Los Angeles, 250 F.3d 668, 685 (9th Cir. 2001). Plaintiffs allege the Defendants interfered with Marina Schroeder's right to familial association with her daughter by deliberately failing to notify her of the sexual assault, depriving her of the opportunity to provide solace and comfort. These allegations are sufficient to state a claim under § 1983.

B.  Under Color of State Law

Defendants also argue the Court must dismiss Plaintiffs' claims against them under § 1983 because Plaintiffs fail to allege any injury was the result of actions taken "under color of state law." Defendants argue Plaintiffs have failed to allege SDUSD had a policy or custom which resulted in any constitutional injury to Jessica, and have failed to allege any lack of training or supervision of peer tutors was the result of deliberate indifference. Defendants also argue Chambers cannot be held liable for Ortiz's actions because she was not his "supervisor."

Plaintiffs may establish liability on the part of the SDUSD by demonstrating Jessica's constitutional injury resulted from an official policy or custom or from a failure to train which

1 amounts to deliberate indifference. Fairley v. Luman, 281 F.3d 913, 917 (9th Cir. 2002). A
2 supervisory official may be held individually liable for her own culpable conduct in the training,
3 supervision, or control of her subordinates, or for conduct that showed a reckless or callous
4 indifference to the rights of others. Preschooler II v. Clark County Sch. Bd., 479 F.3d 1175, 1183
5 (9th Cir. 2007); Flores, 324 F.3d at 1136. In the Complaint, Plaintiffs allege SDUSD and
6 Chambers were deliberately indifferent to Jessica's right to bodily security, SDUSD failed to
7 develop appropriate "peer tutor" selection and screening procedures, and SDUSD and Chambers
8 failed to adequately train and supervise Ortiz and other "peer tutors." [Complaint, ¶ 58-61.] These
9 allegations are sufficient to foreclose dismissal of Plaintiffs' claims against SDUSD and Chambers
10 at this stage of the litigation. Lee, 250 F.3d at 679 (no heightened pleading standard for claims of
11 government entity liability under § 1983).

12 *2. Plaintiffs' Claims under Title II of the ADA and the Unruh Act*

13 Defendants argue Plaintiffs have failed to state a claim for discrimination under Title II of
14 the ADA with regard to both Jessica and her mother. Because Plaintiffs' claims under the Unruh
15 Act are based entirely on the ADA claims, Defendants argue both causes of action must be
16 dismissed.

17 In order to state a claim for discrimination under Title II, Plaintiffs must allege the
18 following four elements: (1) Jessica "is an individual with a disability;" (2) she "is otherwise
19 qualified to participate in or receive the benefit of some public entity's services, programs, or
20 activities;" (3) she "was either excluded from participation in or denied the benefits of the public
21 entity's services, programs, or activities, or was otherwise discriminated against by the public
22 entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [her]
23 disability. McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004) (citing Thompson v.
24 Davis, 295 F.3d 890, 895 (9th Cir. 2002)).

25 In their Complaint, Plaintiffs allege SDUSD has a policy and practice of immediately
26 notifying the parents of non-disabled students who are sexual assault victims, but intentionally
27 delayed notifying Marina Schroeder of the assault upon Jessica because of her daughter's
28 disability. [Complaint, ¶ 80-32.] Defendants argue Plaintiffs' claim must be dismissed because

1  SDUSD acted immediately to notify Marina Schroeder of the abuse. Defendants also argue
2  Marina Schroeder fails to assert an association claim because she has suffered no injury separate
3  from any alleged injury sustained by Jessica. The Court rejects both of these arguments.

4  Whether SDUSD's notification of Marina Schroeder on April 18, 2006 of the sexual
5  assault upon her daughter the prior day constitutes "immediate notification" (as SDUSD contends)
6  or "intentional delay" (as Plaintiffs contend) is a question not properly resolved at the pleading
7  stage. Furthermore, the Court has reviewed the cases relied upon by Defendants in arguing
8  Marina Schroeder's claim under the ADA fails because it she did not suffer any injury separate
9  from Jessica's. Glass v. Hillsboro School Dist. 1J, 142 F. Supp. 2d 1286 (D. Or. 2001); Simenson
10 v. Hoffman, 1995 WL 631804 (N.D. Ill. 1995); Niemeier v. Tri-State Fire Protection Dist., 2000
11 WL 1222207 (N.D. Ill. 2000); Tugg v. Towey, 864 F. Supp. 1201 (S.D. Fla. 1994).[6] Taking as
12 true the allegations contained in the complaint, the Court concludes Marina Schroeder has alleged
13 a separate claim that she was personally excluded or otherwise denied equal services, programs, or
14 activities because of the known disability of Jessica. 28 C.F.R. § 35.130(g). Marina Schroeder
15 alleges she was personally deprived of the opportunity and ability to make an informed decision
16 whether to seek immediate medical or other treatment for her daughter, to help marshal evidence
17 to ensure Ortiz would be prosecuted, and offer Jessica comfort and consolation. At this stage of
18 the proceedings, the Court cannot say as a matter of law that the injury Marina Schroeder allegedly
19 suffered is part of the same injury Jessica suffered. Plaintiffs' complaint states a cause of action
20 for violation of Title II of the ADA and the Unruh Act.

21 *3. Plaintiffs' Claims under Civ. Code § 51.9*

22 Finally, Defendants argue the Court must dismiss Plaintiffs' claims under Cal. Civ. Code
23 § 51.9 because government entities may not be held vicariously liable under that section. Section
24 51.9 provides liability against "a person" who has sexually harassed another in a "business,
25 service, or professional relationship." Defendants argue the school district is not a "person" who
26 committed sexual abuse, and therefore they cannot be held liable under § 51.9 for Ortiz's conduct.
27 In opposition, Plaintiffs argue they may pursue an action against Defendants under § 51.9

---

[6]The Court notes most of these cases were decided on summary judgment, rather than at the pleading stage.

based upon the remedy provision of Civil Code § 52(b) which states: (b) Whoever denies the right provided by section 51.7 or 51.9, or aids, incites, or conspires in that denial, is liable for each and every offense for the actual damages suffered by any person denied that right . . . ." On its face, this statutory language would appear to support Plaintiffs' claim they can pursue an action under Civil Code §§ 51.9 and 52. The primary case Defendants cite in support of their argument for dismissal, <u>John R. v. Oakland Unified Sch. Dist.</u>, 48 Cal. 3d 438, 447-453 (1989) holds only that there is no basis for vicarious tort liability against a school district for peer sexual assault. In this case, however, Plaintiffs allege the Defendants aided the offense and therefore can be held liable directly under Civil Code § 51.9 and 52. At this stage of the proceedings, the Court finds Plaintiffs have stated a claim for relief under Civil Code § 51.9.

### *Conclusion*

For the reasons set forth herein, the Court DENIES Defendants' motion to dismiss Plaintiffs' claims under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, the California Unruh Act, and California Civil Code § 51.9.

**IT IS SO ORDERED**.

**DATED: November 26, 2007**

_____
**IRMA E. GONZALEZ, Chief Judge
United States District Court**