Jeffrey L. Weeks, Esq., *Pro Hac Vice*
WEEKS & LUCHETTA, LLP
102 South Tejon, Suite 910
Colorado Springs, CO 80903
Telephone:    (719) 578-5600
Facsimile:    (719) 635-7458
jeffrey@weeksluchetta.com

David M. Poore, SBN 192541
KAHN BROWN & POORE LLP
30 Fifth Street, Suite 200
Petaluma, California 94952
Telephone:    (707) 763-7100
Facsimile:    (707) 763-7180
dpoore@kahnbrownlaw.com

Attorneys for Plaintiff
JESSICA SCHROEDER

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JESSICA SCHROEDER, BY AND THROUGH HER GUARDIAN AD LITEM, MARINA LANERI SCHROEDER,<br><br>           Plaintiffs,<br><br>v.<br><br>SAN DIEGO UNIFIED SCHOOL DISTRICT; et al.,<br><br>           Defendants. | Case No.  **3:07-cv-01266 IEG-RBB**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO STRIKE THE ATTORNEY LIEN OF AMY AND TOM VANDEVELD; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  April 19, 2010<br>Time:  10:30 a.m.<br>Ctrm: 1<br><br>  Hon. Irma E. Gonzalez |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ........................................................................................ 1

STATEMENT OF RELIEF SOUGHT ......................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 2

I. STATEMENT OF THE CASE .................................................................................................. 2

II. LEGAL ARGUMENT .............................................................................................................. 5

   A.   This Court has Ancillary Jurisdiction to Hear and Determine this Motion. ........................ 5

   B.   The Vandevelds Voluntarily Withdrew from this Case Without Good Cause, and, as a Result, They have Forfeited Their Right to Any Attorney's Fee.......................................... 6

   C.   The Attorney Lien Provision in the Retainer Agreement does Not Comply with California Rule of Professional Conduct 3-300, and It is Not Enforceable......................... 9

   D.   The Vandevelds Cannot Claim a Recovery in *Quantum Meruit*. ......................................... 9

III. CONCLUSION ....................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Augustson v. Linea Aerea Nacional-Chile SA (LAN-Chile)*,
    76 F.3d 658, 663 (5th Cir. 1996) .......................................................................... 7

*Estate of Falco v. Decker*,
    188 Cal.App.3d 1004, 1016 (1987) ............................................................ 1, 2, 6, 7, 10

*Forte Capital Partners, LLC v. Harris Cramer LLP*,
    2009 U.S. Dist. LEXIS 65963 (N.D. Cal., July 21, 2009) ...................................... 9

*Hensel v. Cohen*,
    155 Cal.App.3d 563 (1984) .................................................................................... 7

*In re Hijacking of Pan American World Airways, Inc.*,
    698 F.Supp. 479, 482 (S.D.N.Y. 1988) .................................................................. 6

*Marrero v. Christiano*,
    575 F.Supp. 837 (S.D.N.Y. 1983) .......................................................................... 6

*Moore v. Fellner*,
    50 Cal.2d 330, 341 (1958) ...................................................................................... 6

*Moore v. Telfon Communications Corp.*,
    589 F.2d 959, 967 (9th Cir. 1978) ..................................................................... 1, 5

*Rus, Miliband & Smith v. Conkle & Olesten*,
    113 Cal.App.4th 656, 660, 674-676 (2003) ...................................... 2, 6, 7, 8, 10

**Rules**

Cal. R. Prof. Cond. 3-300 ................................................................................................ 9

## NOTICE OF MOTION AND MOTION

Please take notice that on April 19, 2010, at 10:30 a.m., or as soon thereafter as the matter may be heard in the United States District Court for the Southern District of California, Honorable Irma E. Gonzalez (or, in the alternative, Magistrate Judge Brooks), in Courtroom 1, 880 Front Street, San Diego, California, Plaintiff Jessica Schroeder, by and through her guardian ad litem, Marina Schroeder, will and hereby does move for an order striking the Attorney Lien(s) of Amy and Tom Vandeveld, Attorneys-at-Law ("Vandevelds"), on the grounds that the Vandevelds have forfeited any right and/or interest in any attorneys' fees in this matter, in accordance with *Estate of Falco v. Decker,* 188 Cal.App.3d 1004 (1987), when the Vandevelds unilaterally withdrew from this case on the eve of discovery cut-off without good cause. This Court has ancillary jurisdiction to hear this matter in accordance with *Moore v. Telfon Communications Corp.,* 589 F.2d 959 (9th Cir. 1978).

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declarations of David M. Poore, Jeffrey Weeks, and Guardian Ad Litem Marina Schroeder, including the exhibits attached thereto, the pleadings on file in this action, and such other matters and arguments that may be presented by the parties at the hearing in this matter.

## STATEMENT OF RELIEF SOUGHT

Plaintiff respectfully requests that this Court enter an order granting Plaintiff Jessica Schroeder's Motion to Strike the Attorney Lien(s) asserted by the Vandevelds. The Vandevelds are not entitled to assert an attorney lien in this action as they withdrew from representation without good cause, as that term is defined under California law. The Vandevelds unilaterally withdrew from representation of the Plaintiffs near the close of discovery, without conducting the necessary depositions or retaining the appropriate experts to prosecute the matter, on the sole ground that Plaintiff's Guardian Ad Litem, Marina Schroeder, had legitimately questioned the Vandevelds about an investigation/discovery matter. The questioning of a party's counsel of record about an investigation/discovery matter is not good cause for an attorney to withdraw from

the case, and later assert an attorney lien under a contingency fee contract. *Estate of Falco v. Decker,* 188 Cal.App.3d 1004 (1987) [personality clashes between the client and lawyer does not constitute good cause to withdraw and later claim an attorney lien]; *Rus, Miliband & Smith v. Conkle & Olesten,* 113 Cal.App.4th 656 (2003) [an attorney who voluntarily withdraws from a case without good cause forfeits any recovery for attorney's fees]. Accordingly, the Motion to Strike should be granted.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. STATEMENT OF THE CASE

This case is a civil rights action surrounding the sexual abuse of Plaintiff Jessica Schroeder, a special-needs student, while attending a public high school within the San Diego Unified School District. Plaintiff brought this action through her Guardian Ad Litem and mother, Marina Schroeder ("Guardian"). In this motion, Plaintiff challenges the attorney lien and claimed attorney's fees of her former counsel, Amy and Tom Vandeveld, Attorneys-at-Law.[1]

On May 18, 2006, Plaintiff's Guardian entered into a written retainer agreement with Amy Vandeveld. The retainer agreement provided that Amy Vandeveld would receive a contingency fee in the amount of 40 percent of any recovery achieved after the "first Court Conference or hearing in this Action." The agreement further specifies that one of the required duties of counsel is to "[r]espond promptly and appropriately to Client's questions about the conduct of this matter." (Ex. A, Schroeder Decl., ¶ 2.)

The retainer agreement also contained an attorney lien provision that did not comply with California Rule of Professional Conduct 3-300. Neither the retainer agreement nor the attorney lien provision advised Plaintiff in writing that she may seek the advice of an independent lawyer of the client's own choice in assessing the agreement and lien provision, and Plaintiff was never provided with a reasonable opportunity to seek that advice. (Ex. A, Schroeder Decl., ¶ 3.)

---

[1] There is no evidence that Attorney Tom Vandeveld has a retainer agreement with plaintiff or her mother. Instead, the original retainer agreement was between plaintiff and Amy Vandeveld. Sometime after this retention, Amy Vandeveld associated her family member, Tom Vandeveld, into this case as one of the attorneys of record.

-2-

The Vandevelds' prosecution of this action was minimal.  On July 13, 2007, the Vandevelds filed this action in federal court. (Doc. No. 1.)  In the pre-trial order, this Court set the following deadlines:  (1) written discovery was set to close on September 22, 2008, (2) Plaintiff's expert disclosure was set for October 20, 2008, and (3) deposition and expert discovery was set for December 15, 2008.  (Doc. No. 42.)  Despite these deadlines, as of late-June 2008, the Vandevelds had retained no experts, taken no depositions, and conducted only limited written discovery which failed to address important points of the case.  (Doc. No. 52.)  Moreover, the Vandevelds considered this case to be of nuisance value, and recommended to Plaintiff's Guardian that they settle this matter for only $25,000.00.  Plaintiff refused.  (Schroeder Decl., ¶ 4.)

On June 27, 2008, the Vandevelds unilaterally withdrew from the case because Plaintiff's Guardian ad Litem had questioned the cost of a discovery matter pertaining to Plaintiff's treating physician.  (Schroeder Decl., ¶ 5.)  In particular, on that day, Plaintiff's Guardian and mother, Marina Schroeder, sent Amy Vandeveld the following email:

> Hi Amy,
> As I told you on the phone I have spoken to Geneva on Monday.  I asked her some questions that she was readily able to respond because she keeps records.  Geneva said that, according to her records, you haven't been able to talk to Dr. Grossman because you failed to call back.  You called the office at the beginning of February, the office came up with some dates for the end of January but you never called back to confirm.  The next time you have talked to the office has been on June 4th and yes they are working on some dates.  So it really looks like that if I end up having invested thousands of dollars in discovery, that would have been because of no fault of my own.  You seem to have a tendency not to defy records, so in this context what Geneva said stands, but you must have felt as frustrated as I do when not believed.
> Talk to you soon
> Marina

(Ex. B, Schroeder Decl.)  Approximately 45 minutes later, Amy Vandeveld responded:

> Marina,
>
> Funny that she told you I called at the beginning of February and that she had dates for January.

-3-
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE ATTORNEY LIEN(S) OF AMY AND TOM VANDEVELD, ATTORNEYS-AT-LAW
SCHROEDER V. S.D.U.S.D, ET. AL.                                          CASE NO. **3:07-cv-01266 IEG-RBB**

Also, she actually admits I called on 6/4/08. It is now June 27, 2008, three weeks later, and I still have not received a call back. I called two times in February and at least twice between March 1 and June 4.

I told you at the time of my calls to Geneva that she was "still waiting to get dates from Dr. Grossman." She never gave them to me. If she left dates, I never received them. In fact, I asked you to set an appointment because I had no luck getting a call back from Dr. Grossman's office. You did set an appointment for the end of July.

*Now you seem to be threatening that I have somehow caused you to unnecessarily incur discovery costs.*

*I think it is in everyone's best interest for you to find another attorney.*

*I am invoking the clause in our fee agreement that allows me to withdraw from representation of you and Jessica.* Unless we receive a substitution of attorney form for my execution no later than July 15, 2008, we will file a motion to withdraw.

Good luck to you.

Amy B. Vandeveld

(Ex. C, Schroeder Decl. [emphasis added].)[2] The Vandevelds did not assist plaintiff in finding new counsel, and they did not initially assert an attorney lien on any future recovery. (Schroeder Decl., ¶ 5; Weeks Decl., ¶ 2.)

Shortly thereafter, Plaintiff retained the law firm of Weeks & Luchetta LLP to represent the Plaintiffs in this action. (Weeks Decl., ¶ 3.) A substitution of attorneys was filed on August 13, 2008. Plaintiff's new lead attorney, Jeffrey Weeks, recognized that the matter had not been adequately prosecuted, and, on September 8, 2008, he sought relief to extend the discovery cut-off to take the necessary depositions and retain the appropriate experts. He also arranged for David Poore of Kahn, Brown & Poore, LLP to serve as local counsel. (Doc. 52; Weeks Decl., ¶ 4.) Mr. Weeks was able to obtain an order extending discovery, and he conducted over ten (10) depositions, including the key depositions of the teacher, vice-principal, and other school district

---

[2] Plaintiff is not waiving the attorney-client privilege with the Vandevelds. Instead, plaintiff is only waiving the privilege for the limited purpose of this one email in which the Vandevelds advised her that they were withdrawing from the case, including the reasons why they were withdrawing.

-4-

officials involved in the sexual abuse incidents. (Weeks Decl., ¶ 3.) Mr. Weeks also incurred $60,214.29 in litigation expenses (primarily to retain necessary experts), and he and his staff spent over 800 hours conducting discovery, amending the Complaint, opposing a summary judgment motion and positioning this matter for a reasonable settlement for the Plaintiff. (Weeks Decl., ¶ 3.) In addition, Mr. Poore incurred $14,405.04 in litigation expenses, and he and his staff spent over 200 hours prosecuting this case. (Poore Decl. ¶ 5.)

On November 23, 2009, over a year after they withdrew from the case, the Vandevelds asserted an attorney's lien. (Ex. C, Poore Decl., ¶¶ 3, 4.) The lien was asserted immediately after they became aware that Mr. Weeks' efforts were resulting in serious settlement discussions with the Defendants. (*Id.*) Once they became aware of these discussions, including the possibility of a settlement, the Vandevelds created attorney time records[3], and they served an attorney lien in the following amounts for both fees and costs: (1) $86,192.13 for Amy Vandeveld (of which $1,854.63 is costs), and (2) $33,302.50 for Tom Vandeveld. (Ex. A, B, C, Poore Decl.) The Vandevelds also provided plaintiff with a copy of their billing statements for the first time in November 2009. (Ex. B, Poore Decl., ¶ 3.)

On March 1, 2010, this matter settled in the amount of $400,000.00. Plaintiffs' new counsel agreed to reduce their fee so that the plaintiff would receive that net amount of $225,000.00. (Weeks Decl., ¶ 8.)

## II. LEGAL ARGUMENT

### A. This Court has Ancillary Jurisdiction to Hear and Determine this Motion.

As an initial matter, the district court has ancillary jurisdiction to hear and determine this motion. "[A] district court has power to permit the substitution of attorneys and determine fees, disbursements and liens, as ancillary to the conduct of the principal litigation." *Moore v. Telfon Communications Corporation,* 589 F.2d 959, 967 (9th Cir. 1978) [citing cases]. The district court's discretion to hear such a fee dispute specifically includes jurisdiction to determine "lien

---

[3] The Vandevelds have admitted that they did not keep contemporaneous time records of the work performed in this action, and, instead, created their time once they became aware of settlement discussions. (Ex. A, Poore Decl.)

-5-

claims between litigants and their attorneys where the dispute relates to the main action." *In re Hijacking of Pan American World Airways, Inc.,* 698 F. Supp. 479, 482 (S.D.N.Y. 1988) [proper for the district court to hear a motion to strike an attorney lien when its outcome would affect the consummation of settlement]; *Marrero v. Christiano,* 575 F. Supp. 837 (S.D.N.Y. 1983) ["A federal court, may, in its discretion, exercise ancillary jurisdiction to hear fee disputes and lien claims between litigants and their attorneys when the dispute relates to the main action, regardless of the jurisdictional basis of the main action."] Here, the district court has the discretion to hear this instant fee dispute between the Plaintiff and her former counsel of record; particularly since the fee dispute relates to the main action, and will have a significant impact of the child's recovery. Accordingly, the district court has ancillary jurisdiction over this dispute.

**B.    The Vandevelds Voluntarily Withdrew from this Case Without Good Cause, and, as a Result, They have Forfeited Their Right to Any Attorney's Fee.**

The Vandevelds voluntarily withdrew from this case without justifiable cause, and, as such, they have forfeited any contingency right in the recovery. It is black-letter law in California that an attorney's voluntary withdrawal from the case without good or justifiable cause forfeits his or her right to recover attorney's fees. *Estate of Falco v. Decker,* 188 Cal.App.3d 1004 (1987) [personality clashes between the client and lawyer does not constitute good cause to withdraw and later claim an attorney lien]; *Rus, Miliband & Smith v. Conkle & Olesten,* 113 Cal.App.4th 656 (2003) [an attorney who voluntarily withdraws from a case without good cause forfeits any recovery for attorney's fees]; *Moore v. Fellner,* 50 Cal.2d 330, 341 (1958) ["an attorney who wrongfully abandons or withdraws from a case which he has contracted to handle … may not recover compensation."]; *Marrero v. Christiano,* 575 F.Supp. 837 (S.D.N.Y. 1983) ["Where an attorney withdraws without good and sufficient cause, his lien is *automatically* forfeited." (citing cases; emphasis in original).].

Whether good or justifiable cause exists for withdrawal depends upon the facts and circumstances of each individual case, and the burden is on the attorney to establish that just cause existed for withdrawal. *Augustson v. Linea Aerea Nacional-Chile SA (LAN-Chile)*, 76 F.3d

-6-
PLAINTIFFS' NOTICE OF MOTION AND MOTION TO STRIKE ATTORNEY LIEN(S) OF AMY AND TOM VANDEVELD, ATTORNEYS-AT-LAW
SCHROEDER V. S.D.U.S.D, ET. AL.                                                   CASE NO. **3:07-cv-01266 IEG-RBB**

658, 663 (5th Cir. 1996). The standard of proof must be viewed through the lens of "heightened scrutiny required by the *Falco* case." *Rus, Miliband & Smith v. Conkle & Olesten, supra,* 113 Cal.App.4th at 676.

The Court addressed the underlying reason for the forfeiture rule in *Rus, Miliband & Smith*, 113 Cal. App. 4th at 656:

> To allow an attorney under a contingency fee agreement to withdraw without compulsion and still seek fees from any future recovery is to shift the time, effort and risk of obtaining the recovery (economists would refer to these things as the "costs" of obtaining recovery) from the attorney, who originally agreed to bear those particular costs in the first place, to the client. The withdrawing attorney gets a free ride as to many of the headaches of litigation which he or she otherwise would have had to endure: answering the client's phone calls, showing up for depositions, responding to discovery, fending off summary judgment motions, preparing for trial, fending off in limine motions, picking a jury, fending off motions for nonsuit, judgment notwithstanding the verdict and new trial if he or she does win, and then, at the end of it all, protecting the fruits of victory by responding to an appeal. It is a very tough row which a contingency fee attorney originally agrees to hoe. Thus it is unassailably unfair to allow him or her to escape that labor absent the most compelling of permissive reasons-reasons that, as *Falco* indicated, must pass heightened scrutiny.

The following conduct is considered to be *insufficient grounds* to establish good or justifiable cause to withdrawal: (1) personality conflicts between the attorney and client, (2) the failure of the client to accept a recommended settlement, or (3) breakdown in the attorney client relationship. *Estate of Falco v. Decker,* 188 Cal.App.3d 1004 (1987) [personality clashes insufficient]; *Rus, Miliband & Smith v. Conkle & Olesten, supra,* 113 Cal.App.4th at 675 [breakdown in the attorney client relationship and communications insufficient]; *Hensel v. Cohen,* 155 Cal.App.3d 563 (1984) [settlement rejection insufficient]; *Augustson v. Linea Aerea Nacional-Chile SA (LAN-Chile), supra*, 76 F.3d at 663 [same]. "The reason fees are barred, as explained in *Hensel* and *Falco*, is the inequity of allowing lawyers to capitalize on their own voluntary actions in leaving clients lawyerless." *Rus, Miliband & Smith v. Conkle & Olesten, supra,* 113 Cal.App.4th at 675.

In this case, there was insufficient good cause to justify withdrawal to support any claim for attorney's fees. The Vandevelds will be unable to meet their "heightened" burden of proof to establish that they had sufficient justifiable cause in which to withdraw from this case deep into the time allotted for discovery. Even a cursory review of the pertinent email correspondence demonstrates that Plaintiff's Guardian made a legitimate inquiry pertaining to an investigation/discovery matter, and the Vandevelds attempted to portray such a question as "threatening"[4] in order to support their desire to get out of this case.

It is notable that at the time of her decision to withdraw, Ms. Vandeveld said nothing about being compelled to withdraw for ethical reasons. The email makes it clear that Ms. Vandeveld withdrew because Marina Schroeder questioned her about an investigation/discovery matter.

As the law makes clear, mere personality conflicts or breakdowns in communications between the client and the lawyer are insufficient to demonstrate good cause for voluntary withdrawal to later support a claim for attorneys' fees. The "asking of facially legitimate questions by one's client" about the lawsuit "is not justifiable cause" to warrant a later recovery of attorneys' fees. *Rus, Miliband & Smith v. Conkle & Olesten, supra,* 113 Cal. App. 4th at 660.

The Vandevelds' response to the Guardian's email is equally troubling in light of their required "duties" under the attorney-client retainer agreement. As the retainer agreement makes clear, Plaintiff has the right to ask questions and make inquires about the lawsuit, and one of the "duties of counsel" enumerated in the agreement is to "[r]espond promptly and appropriately to Client's questions about the conduct of this matter." (Ex. A, Schroeder Decl., ¶ 2.) The Vandevelds had an obligation to respond to Plaintiff's questions about the conduct of this matter, and it is facially unreasonable for them to accuse Plaintiff's Guardian of engaging in "threatening" behavior when Plaintiff was inquiring about the status of discovery to Jessica's treating physician, including any cost associated with that discovery. In short, the Vandevelds

---

[4] Plaintiff's Guardian and her daughter's counsel of record have read and re-read that email many times, and we cannot see how the Vandevelds believed that such a question was "threatening" in any way. Instead, plaintiff's Guardian was merely asking a simple the cost of discovery.

-8-

voluntarily withdrew from this case without sufficient good or justifiable cause, and, as a result, they forfeited their fees under *Falco*. Accordingly, they are precluded from now, over a year later, from recovery any amount for attorney's fees. The Court should STRIKE their attorney's lien of $119,494.63.

### C. The Attorney Lien Provision in the Retainer Agreement does Not Comply with California Rule of Professional Conduct 3-300, and It is Not Enforceable.

The Vandevelds' attorney's lien is unenforceable because the retainer agreement does not comply with the requirements of California Rule of Professional Conduct 3-300. In order to enforce an attorney lien provision in a retainer agreement, the attorneys must establish that they advised the client "in writing that the client may seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to seek that advice." Cal. R. Prof. Cond. 3-300; *Forte Capital Partners, LLC v. Harris Cramer LLP,* 2009 U.S. Dist. LEXIS 65963 (N.D. Cal., July 21, 2009) ["the attorney lien was not valid because the attorney failed to comply with California Rule of Professional Conduct 3-300"]. In the case at hand, the Vandevelds are also unable to enforce their attorney lien because there is no evidence that plaintiff or her Guardian were advised in writing to seek the advice of an independent lawyer prior to executing the lien provision, including a reasonable opportunity to do so. Instead, the retainer agreement that was executed back in May 2006 contains no such disclosure. Accordingly, the attorney lien is invalid, and must be stricken, for the failure to comply with Rule 3-300.

### D. The Vandevelds Cannot Claim a Recovery in *Quantum Meruit.*

The Vandevelds are unable to claim any recovery in *quantum meruit*. In order to make a claim for *quantum meruit*, the attorney has the burden of proving: (1) counsel's withdrawal was mandatory, not merely permissive, under statute or State Bar rules; (2) the overwhelming and primary motivation for counsel's withdrawal was the obligation to adhere to these ethical imperatives; (3) counsel commenced the action in good faith; (4) subsequent to counsel's withdrawal, the client obtained recovery; and (5) counsel has demonstrated that his or her work contributed in some measurable degree towards the clients ultimate recovery. *Estate of Falco v.*

*Decker,* 188 Cal.App.3d 1004, 1016 (1987); *Rus, Miliband & Smith v. Conkle & Olesten,* 113 Cal.App.4th 656, 674 (2003).

In this case, the Vandevelds are unable to establish first, second, and fifth elements. First, the Vandevelds will be unable to demonstrate that their withdrawal was "mandatory" under statute or the State Bar rules. It is well-settled that the existence of "mutual animosity" between the client and the attorney, a breakdown in communications, or even a client's refusal to cooperate does not rise to the level of "mandatory" withdrawal. *Rus, Miliband & Smith v. Conkle & Olesten, supra,* 113 Cal. App. 4th at 674-675 [citing cases]. Moreover, "simply writing a letter containing some (to take the [attorney's] interpretation of the letter) insulting implications is not enough. Some clients do insult their attorneys, but mere insult is not one of the reasons for *mandatory* withdrawal listed in Rules of Professional Conduct, rule 3-700(B)." *Id.* [emphasis in original]. Here, the mere fact that the Vandevelds subjectively believed that plaintiff's Guardian's email was "threatening" or insulting is insufficient to trigger "mandatory" withdrawal under any theory of *quantum meruit*. As such, the Vandevelds will be unable to establish element number one.

Second, for the same reasons, the Vandevelds are unable to meet the requirements of element number two. The second element of the *Falco* test requires the Vandevelds to establish that the overwhelming and primary motivation for counsel's withdrawal was the obligation to adhere to the ethical imperatives contained in the mandatory withdrawal provision. Since their withdrawal was nowhere near "mandatory" in this case, the Vandevelds cannot establish this element. Likewise, there is no evidence that the Vandevelds' primary motivation for withdrawing was some ethical imperative.

Finally, even assuming that the Vandevelds could meet the first four elements, they certainly cannot meet the last element; namely, that their work contributed in some "measurable degree" towards the client's recovery. Instead, the evidence demonstrates the opposite. The Vandevelds originally filed this case in federal court (instead of state court), and that was a serious error that caused Jessica's § 1983 claims against the school district to be dismissed on

summary judgment. Thus, the Vandevelds' error caused Jessica to lose one of her most potent claims.

When the Vandevelds were handling this case, they conducted no depositions and retained no experts. Without appropriate expert testimony, the Plaintiff would not be able to win the case. The Vandevelds' work was minimal and passive in nature. As a result, the Defendants refused to make any settlement offer while the Vandevelds were handling the case, and the Vandevelds recommended to plaintiff that she accept a mere $25,000.00.

In stark contrast, once Mr. Weeks took over the case, he received the Court's permission to extend the discovery cut-off, and he propounded appropriate written discovery, took the necessary ten-plus depositions of the witnesses and defendants, retained experts and obtained expert reports at great expense, added new defendants and amended the Complaint, defeated summary judgment, and positioned this case for reasonable settlement discussions – which far exceeded the Vandevelds' recommended settlement figure of $25,000.00. Accordingly, the Vandevelds will not meet their burden of proof, and the motion should be granted.

## III.  CONCLUSION

Based upon the foregoing, plaintiff respectfully requests that the Court grant this motion and strike the attorney lien and demand for fees asserted by the Vandevelds. The Court should order that the Vandevelds are entitled only to reimbursement of their costs of $1,854.63.

Dated: March 12, 2010                     KAHN BROWN & POORE LLP


                                          By: s/ David M. Poore
                                          David M. Poore
                                          Attorneys for Plaintiff