1

2

3

4

5

6

7

8                   **UNITED STATES DISTRICT COURT**

9                  **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  JESSICA SCHROEDER, by and through her guardian ad litem MARINA LANERI SCHROEDER,  12 | CASE NO. 07cv1266-IEG(RBB) |
| 13                                    Plaintiff, | Order Granting in Part and Denying in Part Plaintiff's Motion to Strike; Granting Motion to Approve Compromise of Claim; Granting Motion to Establish Special Needs Trust [Doc. Nos. 135, 136, 137] |
| 14       vs. | |
| 15  SAN DIEGO UNIFIED SCHOOL DISTRICT; THE BOARD OF EDUCATION OF THE SAN DIEGO UNIFIED SCHOOL DISTRICT; KIMBERLY CHAMBERS, individually and in her official capacity as a special education teacher for the San Diego Unified School District; MICHAEL JIMENEZ, individually and in his official capacity as a vice-principal for the San Diego Unified School District; and SUE SKINNER, individually and in her official capacity as a school counselor for the San Diego Unified School District, | |
| 22                                    Defendants. | |

23

24          Plaintiff Jessica Schroeder, by and through her Guardian ad Litem Marina Schroeder,

25  moves the Court for an order (1) striking the attorneys' fees lien of former counsel Amy and Tom

26  Vandeveld, (2) approving the settlement of her claims against Defendants, and (3) establishing a

27  special needs trust for distribution of the settlement funds.  The Vandevelds have filed an

28  opposition to the motion to strike the attorneys fees lien, and Plaintiff has filed a reply as to that

1   motion.  The Court found the motions appropriate for submission on the papers and without oral

2   argument, and vacated the hearing date.

3        For the reasons set forth herein, the Court GRANTS IN PART AND DENIES IN PART

4   Plaintiff's motion to strike the Vandevelds' lien for attorneys fees and costs, and GRANTS

5   Plaintiff's motion for approval of the settlement and motion to establish a Special Needs Trust.

6                                   ***Procedural History***

7        Plaintiff initially filed her complaint on July12, 2007, alleging causes of action against the

8   San Diego Unified School District and teacher Kimberly Chambers under 42 U.S.C. § 1983, Title

9   II of the Americans with Disabilities Act, the California Unruh Civil Rights Act, and California

10  Civil Code § 51.9, as well as negligence.  Plaintiff's mother, Marina Laneri Schroeder, asserted a

11  claim for intentional infliction of emotional distress against the District and Ms. Chambers.

12  Plaintiff also alleged a claim for battery against Fernando Ortiz, the student who sexually abused

13  her, and alleged Fernando's parents, Henry and Sylvia Ortiz, were vicariously liable for their son's

14  actions.

15       Defendants Fernando, Henry, and Sylvia Ortiz filed answers to the complaint on

16  September 14, 2007.  Defendants, the District and Ms. Chambers, moved to dismiss the complaint

17  for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). By order filed November 26, 2007,

18  the Court denied Defendants' motion.

19       Plaintiff's original counsel, Amy and Thomas Vandeveld, withdrew from representation on

20  June 27, 2008, and new counsel substituted into the case on August 13, 2008.  On November 11,

21  2008, Plaintiff moved the Court for leave to file an amended complaint. The Court granted that

22  motion and on February 5, 2009, Plaintiff filed her amended complaint.  Plaintiff's amended

23  complaint deleted all claims against Fernando, Henry, and Sylvia Ortiz, and also deleted Marina

24  Laneri Schroeder's individual claim.  Plaintiff added two new Defendants, Michael Jimenez and

25  Sue Skinner.  Plaintiff deleted all of her claims under the ADA and California Civil Code, and

26  alleged only claims under § 1983 as well as  negligence.

27       The Court denied Defendants' motion for summary adjudication of Plaintiff's claims under

28  § 1983.  Prior to the Pretrial Conference, the parties reached a settlement of all Plaintiff's claims.

1    The parties have agreed to settle the entire case for the sum of $400,000.  Plaintiff's current

2    counsel were retained based on a contingency fee agreement, under which they are entitled to one-

3    third of the gross recovery plus litigation costs.  Thus, current counsel is entitled to $133,333.33 in

4    fees and $74,619.33 in litigation expenses.  However, current counsel have agreed to accept a total

5    of $175,000 for all their fees and costs.  With the payment of certain other expenses, Plaintiff will

6    receive slightly less than $220,000 in settlement of her claims.

7                                          ***Factual Background***

8           At the time of the incident which is the subject of this lawsuit, the Spring of 2006, Jessica

9    was an 18-year old severely mentally retarded young woman with the functional ability of a young

10   child.  [Amended Complaint, ¶ 3.]  Jessica was a student in Kimberly Chambers' Integrated Life

11   Skills ("ILS") class at Serra High School within the District.  The purpose of this class is to teach

12   students with a low level of mental functioning certain basic skills, such as buying groceries and

13   riding the bus, so that they can function in society.

14          Fernando Ortiz was also a student at Serra High School, and was assigned to be a "peer

15   tutor" in Ms. Chambers' classroom in the spring semester of 2006.  Ortiz was in Ms. Chambers'

16   room acting as a peer tutor on the afternoon of April 17, 2006 when he sexually assaulted Jessica.

17   The abuse occurred while others, including Ms. Chambers, were in the room engaging in a

18   bowling activity, and occurred off and on over a period of about 30 minutes.  Information in

19   Ortiz's background likely should have led school officials to recognize he could be a danger to

20   those, like Jessica, who are particularly vulnerable to sexual abuse.  Ortiz pled guilty to sexual

21   assault as a result of the incident.

22                        ***Facts Underlying Counsel's Withdrawal from the Action***

23          Plaintiff's mother and guardian ad litem, Marina Schroeder, originally retained Amy

24   Vandeveld on May 18, 2006, to represent their interests.  The parties executed a written retainer

25   agreement, providing that Ms. Vandeveld would receive a contingency fee in the amount of 40%

26   of any recovery achieved after the "first Court Conference or hearing in this Action."  [Plaintiff's

27   Motion to Strike, Exhibit A.]  This action was filed in federal court on July 13, 2007.  The parties

28   entered into a revised fee agreement on December 17, 2007, explicitly providing that Thomas

1  Vandeveld could be associated as counsel to work on the case and share in any fees.  [Vandevelds'

2  Opposition to Motion to Strike, Exhibit 15.]

3      In June of 2008, a conflict developed between Marina Schroeder and the Vandevelds.  The

4  Vandevelds questioned Marina's honesty based upon several discrepancies between what Marina

5  told them about Jessica's behavior and information reflected in the medical records.  In particular,

6  the Vandevelds began to question Marina closely about her claims that Jessica's behavior changed

7  dramatically after the sexual assault.  Marina told the Vandevelds that before the assault Jessica

8  was "loving and affectionate" and not aggressive.  However, a review of Jessica's medical records

9  revealed numerous references to Jessica's aggression toward her sister and mother before the

10 incident.  In addition, although Marina told the Vandevelds that Jessica was unable to sleep and

11 began wandering around the house after the assault, the medical records made several references

12 to Jessica wandering the house during the night, commenting that chimes had been put on Jessica's

13 door because of this problem as many as two years before the assault.  The Vandevelds also

14 believed Marina had been dishonest about whether there was a man living in the home, about

15 whether Jessica's treating neurologist, Dr. Grossman, would support Plaintiff's claim regarding

16 changes in behavior, and about the legal status of workers who helped Marina with Jessica's in-

17 home care.

18      To address all of these issues, the Vandevelds met with Marina on June 9, 2008.

19 Following that meeting, Marina sent Amy Vandeveld an email addressing the alleged discrepancy

20 as to whether or not there was a man living in her house.  In that email, Marina noted The meeting

21 today has left me very unsettled. Instead of finding solutions to the problems that are arising all

22 you have done is to doubt my credibility by assuming I am lying to you in regards to a stepfather

23 in the house.... I have left the meeting today with an overwhelming feeling of doom, which I find

24 inconceivable as we are supposed to work together in giving my daughter a voice.

25 [Vandevelds' Opposition to Motion to Strike, Exhibit 5.]

26      Amy responded by email on June 11, 2008, reiterating her belief that Marina was not being

27 honest, particularly with regard to a man living in the home and Jessica's behavior before and after

28 the incident as reflected in the records of Dr. Grossman:

1  I would like to continue representing you in this action, but I cannot do so if I feel
2  that you are being untruthful with me and/or that your settlement position is
   unreasonable. ... LET ME BE VERY CLEAR. I EXPECT YOU TO TELL ME
3  THE TRUTH AT ALL TIMES. EVEN IF THE TRUTH MAY NOT BE HELPFUL
   TO YOUR CASE. TESTIMONY AT DEPOSITION, STATEMENTS
   RESPONDING TO DISCOVERY, AND TRIAL TESTIMONY IS GIVEN
4  UNDER PENALTY OF PERJURY. IF YOU ARE UNTRUTHFUL, YOU MAY
   BE FOUND BY A COURT TO HAVE COMMITTED PERJURY, WHICH IS A
5  CRIME. IF I BELIEVE YOU HAVE PROVIDED FALSE TESTIMONY, I WILL
   IMMEDIATELY MOVE TO BE RELIEVED AS YOUR AND JESSICA'S
6  ATTORNEY.

7  [Id., Exhibit 6 (emphasis in original).]

8        Marina responded by very lengthy email on the same date, the pertinent parts of which

9  follow:

10  Amy, there cannot be a lawyer client relationship if you keep distrusting my
    statements. All you have done [sic] the other day is doubt my credibility, attack my
11  character and find problems instead of solutions. ... I cannot believe that you
    doubted me instead of suggesting that the records could be rectified.
12                                    * * *
    If you ask me, Dr. Grossman would look silly on the witness stand. Actually it
13  doesn't even matter if she is more aggressive or not because of the attack ....  Well,
    in my opinion, for the reasons mentioned herein, Dr. Grossman is the least qualified
14  person to determine the outcome of the case. Her opinion can easily be challenged.
    This is where you and I differ, and this might have caused the breakdown in our
15  communication.
                                      * * *
16  It doesn't matter if she was quiet at Chadwick and aggressive at the doctor's office.
    It DOESN'T MATTER!  She was violated, thats [sic] what matters!!  I have no
17  problems in continuing to work with you and I am truthful to you even though you
    think the contrary.
18
   [Id., Exhibit 7.]
19
20        Several days later, on June 19, 2008, Amy told Marina they "need to speak regarding the

21  status of this case and whether we can continue an attorney-client relationship. If we cannot, I will

22  need to withdraw from this case."  [Id., Exhibit 8.]  Finally, on June 27, 2008, a disagreement

23  arose between Amy and Marina regarding scheduling a meeting with Dr. Grossman.  Marina

24  accused Amy of lying about her attempts to schedule an appointment to meet with Dr. Grossman.

25  [Plaintiff's Motion to Strike, Exhibit B.]  Amy responded by email approximately 45 minutes later,

26  disputing Marina's account of her communications with Dr. Grossman's office. The email

27  concluded as follows:

28  I think it is in everyone's best interest for you to find another attorney. I am
    invoking the clause in our fee agreement that allows me to withdraw from
    representation of you and Jessica. Unless we receive a substitution of attorney form

- 5 -

07cv1266

1    for my execution no later than July 15, 2008, we will file a motion to withdraw.
2    Good luck to you.

3                                    *Discussion*

4    *1.*      *Motion to Enforce Attorneys Fees Lien*

5          The Vandevelds have asserted a lien against the settlement proceeds in the amount of
6    $119,494.63, which reflects $84,337.50 in fees for Amy Vandeveld, $1,854.63 in costs for Amy
7    Vandeveld, and $33,302.50 in fees for Thomas Vandeveld. Plaintiff argues the Court should strike
8    the lien, and refuse to award the Vandevelds any fees or costs, because (a) counsel failed to advise
9    Plaintiff of the potential conflict created by the lien clause and her right to seek the advice of
10   independent counsel as required by Cal. R. Prof. Conduct. 3-300, and (b) counsel voluntarily
11   withdrew from representing Plaintiff and thus are not entitled to fees pursuant to established
12   California law.

13              a.  Is the lien clause valid?

14         Plaintiffs originally retained the Vandevelds on a contingent fee basis. The fee agreement's
15   lien provision, which the Vandevelds now seeks to enforce, provides :"Client agrees that Counsel,
16   and any other attorneys associated into the Action, shall have a lien for services rendered and costs
17   advanced on any sums recovered, whether by settlement, judgment or motion, regardless of
18   whether the Agreement is terminated by the Client or by Counsel." [Plaintiff's Motion to Strike,
19   Exhibit A, p. 5, ¶ VIII.] Plaintiff argues this clause is unenforceable, however, because counsel
20   failed to comply with Rule 3-300 of the California Rules of Professional Conduct.

21         Rule 3-300 provides that an attorney must not act in a manner adverse to his or her client
22   unless each of the following are satisfied:

23                  (A)  The transaction or acquisition and its terms are fair and
                reasonable to the client and are fully disclosed and transmitted in
24              writing to the client in a manner which should reasonably have been
                understood by the client; and
25
                     (B)  The client is advised in writing that the client may seek
26              the advice of an independent lawyer of the client's choice and is
                given a reasonable opportunity to seek that advice; and
27
                     (C)  The client thereafter consents in writing to the terms of
28              the transaction or the terms of the acquisition.

This rule applies where an attorney seeks to obtain a lien interest in the client's property in order to secure payment the payment of fees, because a charging lien against a client's future judgment or recovery is "adverse to the client." <u>Fletcher v. Davis</u>, 33 Cal. 4th 61, 69 (2004).  However, as the California Court of Appeal recently recognized, "[t]he inclusion of a charging lien in the initial contingency fee agreement does not create an 'adverse interest' to the client within the meaning of rule 3-300 ...." <u>Plummer v. Day/Eisenberg, LLP</u>, ___ Cal. Rptr. 3d ___, 2010 WL 1645041 at *6 (Apr. 26, 2010) (quoting State Bar Standing Com. on Prof. Responsibility & Conduct, Formal Opn. No. 2006-170, p. 7).  Therefore, the Court concludes the Vandevelds have a valid lien by virtue of the clause included in the contingency fee agreement.

>   b.  Did counsel withdraw voluntarily?

Plaintiff also argues the Vandevelds cannot enforce their lien for fees because the parties entered into a contingency fee agreement and counsel voluntarily withdrew from the case before Plaintiff received any recovery.  In response, the Vandevelds argue they were required to withdraw from the case because Marina Schroeder refused to be truthful with them, creating a conflict between Marina and Jessica's interests. The Vandevelds also argue Marina's failure to be truth created a strong likelihood counsel would be used as a vehicle to present false information to the Court.

A California attorney retained solely on the basis of a contingency fee agreement may not voluntarily withdraw from representing a client and later seek fees for the reasonable value of services rendered.  <u>Estate of Falco v. Decker</u>, 188 Cal. App. 3d 1004, 1014 (1987).  The reason behind the bar is "the inequity of allowing lawyers to capitalize on their own voluntary actions in leaving clients lawyerless."  <u>Rus, Milband & Smith v. Conkle & Olesten</u>, 113 Cal. App. 4th 656, 675 (2004).

> To allow an attorney under a contingency fee agreement to withdraw without compulsion and still seek fees from any future recovery is to shift the time, effort and risk of obtaining the recovery (economists would refer to these things as the "costs" of obtaining recovery) from the attorney, who originally agreed to bear those particular costs in the first place, to the client.

<u>Id</u>. at 675-76.

In order to obtain fees after withdrawing from a contingency fee representation, counsel

must show he or she had to withdraw for ethical reasons and, in fact, withdrew for that justifiable

reason.  <u>Falco</u>, 188 Cal. App. 3d at 1015.  Under this heightened standard, in order to recover in

quantum meruit after withdrawing from a representation based upon a contingency fee

arrangement, an attorney must show the following:

> (1) counsel's withdrawal was mandatory, not merely permissive, under statute or State Bar rules; (2) the overwhelming and primary motivation for counsel's withdrawal was the obligation to adhere to these ethical imperatives under statute or State Bar rules; (3) counsel commenced the action in good faith; (4) subsequent to counsel's withdrawal, the client obtained recovery; and (5) counsel has demonstrated that his work contributed in some measurable degree towards the client's ultimate recovery.

<u>Id</u>. at 1016.  "While a personality clash between the parties may provide good reason for allowing

the attorney to withdraw, it is not necessarily a justifiable reason for purposes of awarding fees."

<u>Id</u>. at 1014.

Here, the Vandevelds argue they had a mandatory obligation to withdraw under Rule 3-

700(B)(2)[1] of the California Rules of Professional Conduct because Marina's "concocted damages

claim" created "an irreconcilable conflict of interest between Marina's interests and Jessica's

interests."  In addition, the Vandevelds argue they had an ethical duty to the Court to make sure

Marina was telling the truth, and would have been required to withdraw under Cal. Bus. & Prof.

Code § 6068(d) if Marina attempted to present perjured testimony to the Court.  Upon review,

however, the Court doubts the Vandevelds were truly motivated to withdraw from this case for the

ethical reasons they now cite. <u>See Falco</u>, 188 Cal. App. 3d at 1015 (warning courts to guard

against attorneys who attempt to abandon their client under the guise of an ethical duty, hoping to

later collect fees if the client eventually recovers through trial or settlement).

Before terminating the attorney-client relationship, the Vandevelds never told Plaintiffs

they were withdrawing because of a conflict between Marina and Jessica's interests.  Although the

many emails attached to the Vandevelds' opposition show growing animosity between Amy and

Marina, none of those emails counsel Marina about the potential conflict the Vandevelds now

assert. The Vandevelds never suggested that Marina obtain separate counsel with regard to her

---

[1]Rule 3-700(B)(2) provides that a member must withdraw from representing a client where "[t]he member knows or should know that continued employment will result in violation of these rules or of the State Bar Act."

1   claims, or that Marina seek another individual to act as Jessica's guardian ad litem. After they

2   withdrew from the litigation, the Vandevelds never suggested to Plaintiff or to new counsel that

3   there was a potential conflict between Marina and Jessica's interests requiring them to be

4   separately represented.

5         Even if the Vandevelds had an arguable need to withdraw for ethical reasons, the records

6   submitted to the Court demonstrate the overwhelming and primary reason behind counsel's

7   decision to withdraw from the attorney-client relationship was a personality clash leading to a

8   breakdown in communications.  The Vandevelds questioned Marina's truthfulness, and Marina

9   questioned the Vandevelds' handling of the case.  The emails between counsel and Plaintiff also

10  reveal an underlying dispute regarding the value of injuries Jessica suffered from the assault.

11  These disputes, and not the Vandevelds' now-asserted ethical concerns, appear to be the reason

12  why counsel withdrew from the case.  Thus, the Vandevelds are not entitled to recover fees for

13  their legal services in this case and the Court GRANTS Plaintiff's motion to strike the

14  Vandevelds' attorney's fees lien.

15        Although the Vandevelds are not entitled to attorneys fees, the fee agreement required

16  Plaintiff to pay costs even if there was no recovery.  [Motion to Strike, Exhibit A, p. 1.]  Plaintiff

17  has not shown that California law precludes the Vandevelds from recovering such costs under the

18  circumstances in this case. Therefore, the Court DENIES Plaintiff's motion to strike the

19  Vandevelds' lien for costs.

20  *2.*      *Motion to Approve the Settlement*

21        Pursuant to Civil L.R. 17.1, "[n]o action by or on behalf of a minor or incompetent will be

22  settled, ... without court order."  Under California law, the court must approve the reasonableness

23  of expenses and attorneys fees paid for the benefit of a minor or person with a disability.  Cal.

24  Prob. Code § 3601.  Here, both the settlement and the provision for payment of fees to Plaintiff's

25  current counsel is fair and reasonable.

26        As indicated above, Defendants have agreed to pay $400,000 in settlement of Plaintiff's

27  claims.  Out of that amount, Plaintiff's counsel seeks $175,000 in combined fees and costs.  From

28  the remaining $225,000, there are $1,591.45 in medical expenses which must be paid, $3,100 in

1   attorneys fees for the creation of the Special Needs Trust, and the $1,854.63 in costs to Amy

2   Vandeveld.  This would leave a final amount of $218,456.92 to be paid to Plaintiff.

3          Liability and damages in this case were both highly disputed.  The Court denied summary

4   adjudication on Plaintiff's § 1983 claims because there were material issues of fact as to whether

5   the Defendants affirmatively placed Jessica in a known or obvious dangerous position, and

6   whether they were deliberately indifferent to that known or obvious risk.  Even assuming Plaintiff

7   could establish each of these elements, there were also substantial issues regarding the nature and

8   value of the injury Jessica suffered from the sexual assault.  Plaintiff was prepared to present

9   evidence at trial that Jessica's behavior changed dramatically and negatively after the assault, such

10  that she would require extensive additional care for the remainder of her life.  Defendants argued,

11  however, that Jessica's negative behaviors were an issue for many years prior to the assault, such

12  that any damages were minimal.  In light of the numerous factual issues for trial, the Court finds

13  the proposed settlement to be fair and reasonable.

14         In addition, the fees sought by Plaintiff's counsel, Jeffrey Weeks of Weeks & Luchetta

15  LLP and David Poore of Kahn, Brown and Poore, LLC, are reasonable.  Counsel took over this

16  case in August of 2008.  They quickly moved to extend the pretrial deadlines and undertook to

17  conduct significant discovery which the Vandevelds did not do prior to their withdrawal from the

18  case.  They amended the complaint to delete claims which were of little merit and value, and

19  focused instead on the § 1983 claim against the District and its employees.  They worked with

20  experts to obtain opinions regarding the injury Jessica suffered, and the value of that injury.  Their

21  work contributed significantly to the Plaintiff's favorable settlement of her claims against

22  Defendants.  Under the attorneys' fee agreement, they are entitled to one-third of the gross

23  recovery, plus litigation expenses.  However, counsel have agreed to reduce their fees and costs to

24  a total of $175,000.  The Court finds this amount of fees and costs is reasonable after considering

25  both the quality of counsel's work and the result achieved.  Therefore, the Court GRANTS

26  Plaintiff's motion to approve the compromise of this action.

27  *3.*     *Motion to Establish Special Needs Trust*

28         Finally, Plaintiff moves the Court for an order establishing a Special Needs Trust to

1   administer the settlement proceeds for Jessica's benefit.  The procedure for approval of an

2   application to establish a Special Needs Trust is set forth in Civil L.R. 17.1.   The Plaintiff's

3   motion contains all of the information required by the Local Rules, and also complies with Cal.

4   Probate Code §§ 3600, *et seq*. Therefore, the Court GRANTS Plaintiff's motion to establish a

5   Special Needs Trust and will enter a separate order as called for by Civil L.R. 17.1(b)(4)(b)

6   establishing the trust.

7   ***Conclusion***

8        For the reasons set forth herein, the Court GRANTS IN PART AND DENIES in part

9   Plaintiff's motion to strike the Vandevelds' lien for attorneys fees in costs.  The Vandevelds have

10  a valid lien for $1,854.63 in costs, but otherwise are not entitled to any attorneys fees for their

11  services in this case.  The Court GRANTS Plaintiff's motion to approve the settlement and to

12  establish a Special Needs Trust.  The Court will separately enter an order establishing the Special

13  Needs Trust.

14       **IT IS SO ORDERED**.

15  **DATED:  May 12, 2010**

16                 **IRMA E. GONZALEZ, Chief Judge**

17                 **United States District Court**

07cv1266